Okay, our second case this morning is case number 4120209, Dixon et al. v. Weitekamp-Diller et al. For the appellate, we have Barry Hines, and for the appellee, our Kurt Wilkie. Mr. Hines. Your Honors, may it please the Court, Counsel, I am Barry Hines and I am for the appellate. Your Honors, the trial court in its judgment order set forth in great detail its basis for its order, which has been very helpful in writing the brief in this case and in sending forth my arguments as to why the trial court should be reversed. The basis are twofold in the case of the adoptions. First, the trial court placed its reliance very strongly on the case of Cross v. Cross, and that is the point that the adoptive mother in this case, and father, Mr. Diller specifically, father, was basically making the adoption for the sole purpose of making these children his heirs for the purpose of an inheritance and for no other motivation whatsoever. The statute in this state, the adoption statute, does not require that any motivation be looked at whatsoever. When a child is adopted, the child becomes the same as a natural child. There is an equivalence, an absolute equivalency, and there is no need to look at the motivation. In fact... In order to agree with you, would we have to conclude that the Cross case was wrong? Yes, you would, Your Honor. Why should we conclude that it was wrong? Well, first of all, let me say that you would not be the first to conclude that it is wrong. The First District has done so. What case was that? The Fayville case. Well, Fayville cited Cross, and what did they say about Cross then? Did they say we're declining to follow it or our earlier decision was incorrect? I believe they did, in fact. I just re-read it. They cited it, and never... We've been at this for a long time, and this is my 24th year, and I've made it pretty clear, and I think that people understand. If there's an earlier decision that we're not required to follow, even of the same court, we can't make a point of saying, you know, that early decision, we don't think it was rightly decided that we're not going to follow. Or language to that effect. None of that appears in Fayville. I've read Fayville more than once, Your Honor. And why isn't it there? If I'm right, I think I am, Counsel. Fayville did not follow Cross. Well, if they're citing Cross, and they choose not to say it was wrong, what does that mean? I believe that they did say that Fayville was wrong. I think what they said was that Cross v. Cross was incorporated into the adoption of the Probate Act. Correct. But then it was made only to apply to instruments after 1998, in subsection 2-4A. I believe that what they... Yes, I believe that they said that Cross v. Cross basically was brought into the law by way of the 1997 amendment to the Adoption Act. So it was an effort to codify, the legislature intended to codify the holding of the Cross? And it was prospective in the codification. What does that mean? The law was prospective. It took effect for instruments January 1, 1998 and thereafter. So the legislative amendment would not affect the holding of the Cross for documents executed after what? Documents executed prior to January 1, 1998. Would not be affected? Would not be affected by Cross. Well, I'm having trouble understanding how the legislation affected the holding in Cross. Assuming for the moment that we thought the Cross subterfuge analysis was correct. On page 19 of your brief, you talk about the amendments. It amended the Probate Act. In large part, the purpose of that amendment was to codify Cross. Now, just pausing right there. If the purpose of it was to codify Cross, then that would seem to me to suggest that Cross would still be good law. The legislature essentially is embracing it and codifying it. And then it would still apply. Isn't that what you're writing? The legislature codified it, but said it's only good law going forward. So the legislature codified it going forward, but made it no longer good law going retrospectively? I think that the legislature has that prerogative, Your Honor, that they can do that. Is that what they did? That's the end result. I think that is the end result. They looked at Cross v. Cross. Let me explain it this way, Counselor. Because I'm having trouble understanding both what the legislature was doing and your assessment of it. If the legislature at some point after the Cross decision liked it and codified it and wanted to make a codification going forward, why would any of those legislative actions put into doubt the Cross case retrospectively for instruments written earlier? Because the Cross court ignored the law as it existed when the Cross decision was made. But that would suggest that Cross was wrong, the legislature understood it being wrong, and their later amendments were to undo Cross. Well, Cross attempted to legislate. But I'm quoting from page 19 of your brief. The Probating Act was amended in large part, and in large part the purpose of that amendment was to codify Cross. Now, the legislature codifies decisions as an act of approval. Isn't that so? The legislature can look at a court opinion and can say that's a good idea, and they can make it the law. But a court opinion can be wrong because it is a wrong interpretation of the law. Well, but then what the legislature would be doing is the legislature would have cited Cross and come up with this amendment to reject it. But that's not the argument you make. What am I missing, Mr. Hines? I don't want to be misconstruing your argument here. If I am, I apologize, and I'm raising it to give you an opportunity to clarify. No. I think that the argument you're making is all right. The argument you're making is a good argument, except for the fact that you're leaving out that it was codified going forward. The law that was made by the legislature in 1997 was a law that was only good going forward. It did not apply to instruments that were made prior to January 1, 1998. Why would the legislature do that? Why would they do it? Yes. They evidently thought Cross was right, stood for the correct proposition, passed legislation, codified it, if you will. Because they would have to go back and basically reverse their own laws, which is not fair. Well, they did that, didn't they? There used to be a presumption against an adopted person, and then they changed the presumption in favor of the adopted person. Let me run this past you. Perhaps they liked Cross, they codified Cross, they made it prospective, not retrospective, because they assumed Cross, being a case from an appellate court, was the law that covered documents that had already been drafted. That, to me, makes sense. Does it make any sense to you? Yes. It doesn't matter. It would already take an action on it, based on the law. That doesn't matter. I'm saying the legislature liked Cross, codified it, all documents subsequently made under this new legislation codifying Cross, and didn't go back because they assumed Cross was the law. Am I making... No, I don't think that's the reason they did it. I think Cross basically totally ignored the law when it was decided. It ignored the fact that there was an irrebuttable presumption concerning instruments that had been written prior to... You say they ignored the law. Well, was there a case at that time that Cross was decided that said that there's an irrebuttable presumption, even when there was subterfuge involved? Didn't they throw in subterfuge? Wasn't that a new concept in Cross that had not been litigated before? It was a new concept that Cross had... And has it been repudiated? You seem to think it was in Fayville. Yes. Did Fayville say that Cross was wrongly decided because it took into consideration subterfuge? No. Well, isn't that the uniqueness of the Cross decision? Isn't that why it is different than anything else out there? Because it is a holding regarding subterfuge, making it a case in and of itself. It talks about subterfuge, although that's not what the decision turned on. I saw you wrote that in your brief. It turned on the fact that they decided that the child was not a descendant of Mary. But we would have to hold, if I understood you correctly, Cross as being wrong for us to reverse the trial, would we not? Because that was in the trial court's interpretation of Cross. But is that your position before this court? We would have to hold Cross as being incorrectly decided to say what Fayville didn't say. Namely, Cross was wrong. And we're not going to follow it. Right. I just want to make sure I understand your position. I don't want to be putting words in your mouth. But I want to make sure I understand that that's your position. As to the trial court, you have to say the trial court was wrong. For following Cross. The trial court was wrong because it followed Cross, which we shouldn't because Cross was wrongly decided. Isn't that the essence of your argument? The trial court was wrong in interpreting it. Or in relying on Cross. Because Cross was wrongly decided. What didn't stand for the proposition that there's dictum, certainly, in Cross. The fact that what the trial court said was in it. It's certainly in it. And I do not believe that there's any exception in either 2-4-E or 2-4-F. Well, as a matter of policy, Justice McNamara, a distinguished guy in the First District from years ago, and a long-serving judge up there, was the one who wrote Cross and came up with the subterfuge analysis. Why isn't that good policy? Why shouldn't that be something that indeed would apply to this very case? I mean, how many grandmothers get adopted? We don't see a lot of that going around except for maybe something like this. Where do you draw the line? It's easy with an adult child. Where do you draw the line? How do you draw it? Well, you know, I'm reminded that, you know, the question is, was this subterfuge or not? I'm reminded of the famous quotation by Potter Stewart. How do you define pornography? Well, I may not be able to, but I know it when I see it. This case suggests to me, like bells ringing and lights flashing, subterfuge. Am I wrong to view it that way? That's the way the trial courts are. What's the error in viewing this as all a matter of subterfuge, contrary to what the original creator of these trusts was all about? What is the error of that? Yes. You're looking at the motivation. And the legislature has said nothing about looking at the motivation in either 24E or 24F. So you're acknowledging under these facts there was subterfuge, but your argument is it doesn't make any difference. The motivation should make no difference. And subterfuge, what is subterfuge? If Mr. Geller inherited these children to make them his heirs. When 90-year-olds adopt grandmothers for the purpose of changing what would normally be the inheritance, that suggests maybe there's subterfuge involved. In Fayville, apparently the lady just admitted what she was doing. She adopted her two 50-year-old step-sons to make them her heirs. No one seemed to be making an issue about it. Well, how persuasive should Fayville be if it cites Cross, provides no further analysis, seems to be inconsistent with it, but doesn't explain why Cross is wrong, or even state explicitly that we're choosing not to follow it. Well, it seemed to be fairly explicit to me, Your Honor, that they were choosing not to follow Cross because Cross was codified in the 1997 amendment. The 1997 amendment was prospective. The document, the instrument that was the basis of that decision was a 1939 will, therefore covered by 2-4-E-F, and therefore the presumption that follows 2-4-E and 2-4-E-F that you are the child of the adoptive parent, and therefore the heir follows, and that must be rebutted by some evidence, clear and convincing evidence, and the court found none, so they remanded. And it seemed to me that it was a foregone conclusion that they did not believe that Cross applied because Cross was codified, Cross was prospective only under the 1997 amendments, therefore it did not apply. 2-4-E-F applied. I'm having the same trouble as Justice Turner did and I mentioned earlier that we have the legislature approving of Cross, seeking to provide an amendment to adopt it, as you can see, to codify it, and yet somehow the amendment undid it. The legislature didn't understand what they were doing? And I have absolutely no problem with it, Your Honor, because I think the legislature knew exactly what they were doing. They liked the idea behind the reasoning of Cross v. Cross, but Cross v. Cross was wrong when it was decided because they ignored the law that was in effect under 2-4-E and 2-4-F. Well, then it seems to me if they liked the idea behind Cross but thought maybe Cross wasn't soundly legislatively based, then to codify Cross they would have provided legislative support, underpinnings to make it clear that the subterfuge argument is now legislatively sound. And that would have been a good idea. Is that what they did? They did not. They did not say anything in there, but that is what, in effect, I think they did in a roundabout fashion by saying that you had to live with the adoptive parents for two years. Basically, they incorporated the idea, but they didn't come out and say subterfuge is bad. Well, isn't it correct, Mr. Hines, that under 2-4-A, the legislature could have provided and left off an effective date of the Amendatory Act. It could have been applicable retrospectively, but they chose to make it only applicable prospectively. It could have been, but they chose to make it prospective. And if they had done that, then they would have codified Cross for all cases that would be coming through, but they chose to only make it prospective from 1998 forward. That is correct. And the other thing, Your Honor, is that legislatures can choose to change their mind. A famous judge once said, policy is set by the legislature. Yes. Court systems, lawyers, trial judges must follow the law. We have to take the law as it is given to us, whether we like it or not, whether we like the consequences or not. Well, I am still trying to figure out your brief and your argument that the legislature intended to codify Cross, but the argument, the response you just gave to Justice Pope apparently is, well, they intended to, but by God, they sliced it off anything prior to 1998 and all kinds of, you know. Your position is they intended to codify Cross, but after this amendment, not much was left of Cross. Isn't that correct? In effect, well, a lot was left. They just codified it going forward. They did not apply it retroactively. And I can see why they did, because that would have really been, in my mind, difficult to deal with. You have the law, which everybody has lived with and followed, and everybody has known what the rules are, and then in 1997 you say, wait a minute, we're changing the rules. That's exactly what they did when they changed the presumption. In 1955. Yeah. I mean, so it was. I agree. They clearly can do that. Anyway, you're out of time, but you'll have rebuttal. Okay. Okay, thank you, sir. Mr. Wilkie? Thank you. May it please the Court, Counsel. Let me start with the Fabel case. Did I miss in Fabel where I don't recall they're saying Cross was wrong anywhere, did they? No, it does not say that. And the important thing to remember about Fabel is that it's a case that is up there on a motion to dismiss. All we're looking at are allegations in a complaint. The actual issue, the ruling of the trial court, was that Section 2-4A can be applied retroactively. That's not what 2-4A says. So, obviously, the trial court's ruling in Fabel was wrong. It had to be reversed, but the case was remanded. Right, but they did say 2-4F applied there. Yes. Right. And 2-4A did not. Correct. And under 2-4F, you're limited. Basically, there's a presumption no matter when the child was adopted, either before or after 1989. Right. And there's a presumption that that child is treated as the natural child, unless from the instrument itself there's clear and convincing evidence otherwise. Right. You have the same law applicable in the Fabel case that was applicable in Cross and is applicable in our case, which is we cannot rely on the statutory amendment, which is only prospective, but we can rely on the public policy expressed in Cross, which the legislature affirmed that subterfuge adoptions would not be allowed. And they never reached that question in Fabel because it was on a motion to dismiss. It goes back, and just like in the Cross case, they need to gather and present the evidence as to whether or not this is a subterfuge adoption. One thing we don't know in the Fabel case is whether the adopting mother actually raised these stepchildren. Well, that would be an important issue as to whether or not it's a subterfuge adoption, but you can't know that. But wait, the statute doesn't say we make an exception in subterfuge cases. The statute says... The statute does not say that that's correct. The statute says you have to show the intent to exclude the child by the terms of the instrument, by clear and convincing evidence. Right. In Cross case, under that very law, the Cross case says we are going to find that this adoption will not be allowed to defeat settled inheritance rights for two reasons. Cross didn't... Wait a minute. First of all, Cross didn't involve clear and convincing evidence. This statute was amended after Cross. Right. Cross' finding is based on two different reasons. The same as the finding in this case. Number one, that we're not going to allow a subterfuge adoption to defeat inheritance rights. And number two, that the instrument shows plainly... That's the language used in Cross. The instrument shows plainly a contrary intent sufficient to defeat that presumption. In this case, the trial court made the very same ruling. We've got a subterfuge adoption. We're not going to allow that to upset the remainders in these three trusts. And second, we have instruments in question, these three trusts, which clearly and convincingly demonstrate this was not the testator's intent. Okay. Tell me where in the statute, because this is a statutory issue to me. Where in the statute do we get the right to put an exception on for subterfuge? When the legislature has said, here are the exceptions. An adopted child is the natural child except if it's shown by clear and convincing evidence by the instrument itself that an adopted child was to be excluded. We cite an Illinois Supreme Court case on page 29 of our brief, the Schultz case, recent case 2010, which states that the public policy of a state is reflected in its constitution, statutes, and judicial decisions. Cross expresses the public policy of the state of Illinois that subterfuge adoptions which amount to a fraud are not going to be allowed to defeat settled inheritance rights. And the legislature subsequently came along and affirmed that. Well, that's the question I wanted to ask. And Mr. Hines wrote in his brief that the 1997 amendment was in large part for the purpose of codify cross. Is that your position as well? There's no question that the purpose of the amendment was to codify cross. Is that what the legislators said in explanation? Yes. They cited cross? Yes. Well, so here's my problem. Assuming the 1997 amendment never occurred, then cross would continue unabated, I take it. Yes. And is there any decision of the appellate court or Supreme Court since cross that says, and cross was what again, remind me, the 1970s? The decision. Yes. When was it rendered? The decision was in 88. Okay. I'm sorry, I couldn't remember. Has there been any decision since then that said cross was wrong? No. So if in 1997 the legislature, according to Mr. Hines and you, wanted to codify cross, then how, and I'm trying to understand the argument, that how by what they did in 1997 undercut cross's application. That seems to be the argument that he's making here, and I want to give you a chance to respond to it. Right. Yeah. There was no intention to undercut cross. There's lots of reasons why you make a statute perspective only, but making a statute perspective only is not equivalent to overruling a decision that you're endorsing. And here there is a difference between pre-amendment cases and post-amendment cases. Today we wouldn't even be here today because absolutely they would be out. There would be no question. We wouldn't have to, as under cross, the case we are confronted with, we have to gather and present evidence to the court to show that this is in fact a subterfuge adoption. That's exactly what we did. So as Justice Turner mentioned, as I did earlier, the gist of cross appears to be the recognition by the First District Appellate Court, notwithstanding other stuff going on here, if it's a subterfuge adoption, we're not going to permit it. That's exactly right. Since that time, 1988, I want to be clear about this. Has there been any action by the legislature in the intervening 24 years or any court of review that says cross is wrong? No. They can't say that. There was no basis to say that. No. And you read the 1997 amendment as not undercutting the cross subterfuge holding? Right. I think the legislature did want to make sure going forward that it's absolute. There's no debate. Did anyone in the legislative body when this proposal was made in 1997 say words to the effect, hey, where did this subterfuge come from? Cross is wrong. We're going to get rid of it. All we have is the language that we presented when legislation was proposed reciting the fact that it was based on cross and the purpose was to codify cross. It was based on cross and its purpose was to codify it. Right. Mr. Hines is correct in his assessment. Yes. Justice Pope, to get back to your issue, I should respond to the Nixon case because that was raised in the reply brief. There is a case out there from Nebraska, Supreme Court of Nebraska, which has very similar facts, and the court there basically held that we are not going to have this subterfuge exception because the legislature has never expressed a public policy in our state which says that subterfuge adoption should not be allowed. But that ruling could not be made here in Illinois because our legislature has expressed that public policy. And again, I refer back to that Supreme Court case which notes that the legislature is not the sole entity that can express the public policy of the state of Illinois. Case law can do that as well. And when the legislature affirms a particular expression of public policy that is embodied in a case and endorses it, that's an indication that that case was correctly decided. Well, the Supreme Court could have taken cross and reversed it, or if we affirm the trial court here based on cross, take this case and reverse it, saying as the Nebraska Supreme Court did, you're wrong. But after cross was decided, 2-4-F was enacted, right? That's an amendment from 1989. Cross was 1988. And what 2-4-F says is the intent to exclude the child has to be demonstrated by the clear and convincing evidence from the terms of the instrument itself. So I guess if your argument is the legislature could have gone ahead and endorsed cross at that time instead of when it did later, that may well be true. But again, I don't think you can infer from that. Well, what I'm saying is when the legislature enacted exceptions to the presumption that an adopted child is a natural child, they set forth what exceptions apply. And the exception is if the instrument itself demonstrates clear and convincingly  and you only look at the instrument itself. That was post-cross. Very shortly post-cross, that's correct. So how do we still engraft a subterfuge exception to a pre-1998? I think because you can't assume that by the legislature's failure to pick up cross then instead of a few years later that the subterfuge argument was in doubt. Well, we're controlled by the statute. We interpret the statute. The statute says here's the exception. The exception is this. But we're saying, no, the exception is not only that. We have this exception too. Despite the fact that when they did adopt the exception later in 24A, they made it only apply to instruments after 1998. I don't think you can reach that conclusion unless you're willing to conclude cross with wrongly decided. Well, how about I think Justice Polk is getting at is if we follow cross, we're ignoring the statute. We're not following the statute. Do you have a response to that? Two things. Number one is that there are two distinct reasons. One is based on the statute. One is a policy non-statutory rule, subterfuge rule. Public policy, and what's the second reason? The second reason is because the instruments themselves, looking just at the instruments, the instruments themselves reflect a clear and convincing intent. Let me just briefly address that point on clear and convincing. You know, the defendants have argued that cross simply ignores that presumption, that cross cites that presumption, they quote it verbatim, and then they hold that the trust plainly shows a contrary intention. That's the same finding that the court made here, and it's the same as the Griswold case we saw. The theory is expressed that if a life tenant can go out and choose his descendants by adult adoption and thereby leave the remainder to his male partner or his wife or four ladies in their 50s, then we have given the life tenant an unrestricted power of appointment over the remainder. And if there's anything that's obvious from these three trusts, it's that the settlors wanted to control where that remainder went. They didn't give that right to Hughes, the life tenant. And if we find that anybody who is a life tenant can simply through a quickie consent adult adoption name his own descendants, then we are effectively taking that power to appoint the remainder away from the settler and we're giving it to the life tenant. And that is clearly flatly contrary to what these settlers intended by having these multi-generational family trusts. So I think even aside from the sceptrophage argument... Adopted children should not be considered lineal descendants? Absolutely not. I'm not even suggesting that there was an intent here to exclude adopted children. What I'm saying is that the intent was that the life tenant couldn't just go out and pick anybody to become his descendant, which is what happened here, it's what happened in Cross, it's what happened in all these... But these descendants have been eligible for an adult adoption in the state of Illinois? No. Yes. Isn't there a two-year period where they have to live? Yes, that's right. Well, that did... Certainly the last... I don't think any of the four that were adopted. That's right. So they could not have been adopted as adults in Illinois. Does that matter? Why should they get the benefit of the Probate Act, the presumption there, if it's an adoption that Illinois would not have allowed? Well, I mean, I guess that's an argument. A lot of these issues are coming up where there are adoptions in other states, and all those states have different rules as to what's allowed and what's not allowed. Well, I consider we would have reciprocity for recognizing adoptions, but I could also see, since they could not have been adopted under Illinois law, that they're not entitled to the benefit of the presumption in the Probate Act. But you don't make that argument? I don't make that argument. I don't dispute it. Well, I would hope not. It works to your benefit. Let me ask you this. Is there an age limitation on adult adoptions? No. In fact, I was talking with one of the judges in Chambers. What if, like, my father left me a life estate, then it goes to my lineal descendants. Say I was born when my father was only 16. I happen to meet somebody that's, we'll say, 17 years older than me, end up adopting that person. That adopted, that person who I adopted and befriended, is not only my lineal descendant, but would be the lineal descendant of my father, even though that person is already my father. Isn't that a logical interpretation of what your opponent is arguing? Yes. Does that make, I mean, practically any common sense? I mean, that somebody older than my father could nevertheless be his lineal descendant? No. It is illegal fiction. But again, and that's common sense, that's where we get to the second argument, because common sense tells us that people don't adopt their roommates, their cousins, their wives. I don't know. My review of the case law looks like there's a lot of that going on out there. I think a loophole was found somewhere, you know, and now everybody's doing it. So I don't think that's the case. I think times have changed and people are onto this for some reason. They are. I saw something on television this morning where some millionaire who's on trial in Florida adopted his girlfriend, who's 17 years younger. She's his girlfriend. Now, I wonder how the incest laws work on that. Unfortunately, the case law across the United States, with the exception of that one Nixon case, has been very consistent. This is not going to be allowed. This is really a fascinating issue, I have to say. I don't know if I need to address the 63-acre issue very briefly, but again, we have a... Why was there no evidence of where the money came from to purchase that 63 acres? Because it doesn't make any difference. Couldn't hear your answer. What? It doesn't make any difference. We can assume that Hughes himself paid for that 63-acre tract. It was titled in his own name, and if he used his own money, it would still be out of contention. It comes back into the trust. Yes, and we quote directly on that point from Bogerts on trustees in our brief. And the fact is, he never intended it to be his own. That's the thing about this case. The same thing with the subterfuge adoptions. This isn't what Hughes wanted. This is what his wife wanted. And Hughes, for 18 years, treated this as part of the trust. It was managed by the farm trust manager. They paid the taxes on it. It was on the farm reports. They amended the legal description to include the 63-acre tract. None of that changed until Barber's new lawyers got title work and saw that that one tract was nominally titled in Hughes' name, and then they said, oh, this needs to be Hughes. They do a deed to put it into a trust that Barber has. Well, if he had used his own funds to purchase the ground and titled it in his own name and had the trust manage it, why couldn't the trust seek reimbursement from him for the real estate taxes that it paid, whatever, but it would still pass through him? It could, but, again, you are usurping a trust. If that's your intention when you buy it, you are usurping a trust opportunity. That's a breach of your fiduciary duty as trustee, even if you use your own money. I don't understand that. What duty are you breaching if you use your own money? Because the trust has an opportunity to acquire an adjacent piece of property. That is of value. In fact, that is recognized in this trust to be of value because William Sr. even mentioned in his trust that I encourage the trustee to go out and buy adjacent property for the benefit of the trust. So the breach is that instead of purchasing it on behalf of the trust, purchase it on your own behalf. That's a violation of the fiduciary duty. Yes, absolutely. Even though the trust document itself said he could purchase it in his own name. Again, that's in the Trust and Trustees Act. Every trust has that provision. But that's just for nominal, for the benefit of the trust. Thank you. Thank you. Rebuttal, please. The comment was made that you have to perhaps choose between the statute and the case law on the adoption. I believe you have to follow the statute. And the statute has no exception for subterfuge. There simply is none. And just as both of you pointed out, the sub F came after cross. There was no change until 97. 97 statute just does not apply to this case. So there is no exception for subterfuge. I believe the court has to follow the statute. On the issue of the clear and convincing evidence, the Supreme Court in the case of King, First National Bank versus King, answered the issue of the descendant. This particular will leaves in the uses the language descendants for subterfuge. It does not add anything further besides that language. The King case addressed that. This court addressed it in the Martin v. Gerdes that the use of the language descendants for subterfuge without more is not clear and convincing evidence. To me, there is no issue at all. There is just no rebuttal evidence whatsoever. Lastly, Your Honor, Justice Turner, you raised the issue about, in fact, full faith and credit. That is the answer to a Florida adoption of Illinois law. Illinois recognizes Florida adoptions. Full faith and credit is the answer. Thank you, Your Honor. Very interesting case. Thanks to both of you. The case is submitted. The court stands in recess until after lunch.